IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN RUSSO, | : | CIVIL ACTION NO. 1:25-CV-1773 |
| | : | |
| Plaintiff | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| KATY HILEMAN, *et al.*, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983.

Plaintiff, Jonathan Russo, alleges that defendants, officials at Adams County Adult

Correctional Complex ("ACACC"), violated his rights by using excessive force on

multiple occasions. Defendants have filed a partial motion to dismiss. The motion

will be granted in part and denied in part.

I.      **Factual Background & Procedural History**

Russo filed this case on September 3, 2025, and the court received and

docketed his complaint on September 23, 2025. (Doc. 1). According to the complaint,

Russo was placed in ACACC on January 26, 2023, and was in that prison at all

times relevant to the complaint. (Id. ¶ 1).

The complaint alleges several instances of harassment by defendant Lawyer,

a correctional officer in the prison. On September 23, 2023, Lawyer purportedly

denied Russo a razor and said that it was his "discretion" to do so. (Id. ¶ 3). After

Lawyer did so, Russo allegedly became upset and went back into his cell. (Id. ¶ 4).

Lawyer allegedly called for backup and then slammed the cell door against Russo's

back. (Id. ¶ 5). Lawyer similarly slammed the door against Russo's back during a separate incident on September 29, 2023. (Id. ¶ 6).

Sometime between October 1 and October 8, 2023, Lawyer denied Russo a shower while allowing other inmates to shower and claiming that Russo refused the shower. (Id. ¶ 7). Lawyer did not notify his supervisor about this incident until Russo covered his cell window. (Id. ¶¶ 8-9). Defendant Raylock, a lieutenant in the prison, came to the cell after Russo covered the cell window. (Id. ¶ 10). Russo told Raylock that Lawyer had denied him a shower and that he had not refused the shower. (Id. ¶ 11). Raylock reviewed the relevant security footage, confirmed that Lawyer had denied him a shower, and arranged for Russo to get a shower. (Id. ¶ 13-14). Russo then filed a grievance complaining about Lawyer's harassment. (Id. ¶ 15). Raylock allegedly responded to the grievance and denied it while falsifying information about Lawyer denying Russo a shower. (Id. ¶ 16). Russo asked Raylock why he had falsified information, and Raylock purportedly stated that he would "always have his officers' backs." (Id. ¶ 17).

The complaint alleges that Lawyer further harassed Russo on an unknown date "by holding his thumb and forefinger apart indicating plaintiff has a small penis." (Id. ¶ 18). Lawyer also denied Russo a shower on another occasion in November 2023, and allegedly challenged Russo to a fight while doing so. (Id. ¶ 19). Russo again covered his cell window to get supervisors to respond. (Id. ¶ 20). Officers Herring and Diehl responded, confirmed it was true that Lawyer had denied Russo a shower, and removed Lawyer from the housing block. (Id. ¶ 21).

2

The complaint alleges that sometime in August 2023, Russo briefly covered his cell window while he was using the bathroom and defendant Sellman threatened to file misconduct charges against him for doing so. (Id. ¶ 22). Russo told Sellman, "one day [you] will be in prison and know what it's like to be deprived of you[r] privacy." (Id.) This comment allegedly upset Sellman and caused him to begin "targeting" and harassing Russo. (Id. ¶ 23). Sellman allegedly fed Russo last while distributing meals and refused to allow Russo to use his tablet during his shifts. (Id. ¶¶ 24, 26). Sellman also allegedly "found [Russo] on social media and began obsessing over [him]" to harass him. (Id. ¶ 28). Sellman allegedly began to "belittle and make comments about [Russo's] social media postings." (Id. ¶ 29). On October 22, 2023, Sellman made Russo give him a styrofoam cup from his cell, smashed the cup against the cell window, and stated that he "wish[ed] he could smash the plaintiff the way he smashed the cup." (Id. ¶¶ 30-31). Russo filed a grievance about the incident, but Raylock denied it, stating that Sellman was "only joking." (Id. ¶ 32).

Around this time, Russo had purportedly "been in the hole for approximately 3-4 months." (Id. ¶ 34). Defendant Hileman, the prison's warden, allegedly "created the illusion" that she would be approving a visit for Russo with his son and his son's mother. (Id. ¶ 35). Hileman then denied the visit at the "last minute" upon learning that Russo had been cited for misconduct by defendant Sellman. (Id. ¶ 36). Sellman then said to Russo, "you didn't really think we'd let you get a visit did you?" (Id. ¶ 37).

Shortly after this incident, Hileman allegedly informed Russo that he would be transferred to a cell with an inmate named Thomas, "who was on a single cell status due to his mental health." (Id. ¶ 38). Russo refused to leave his cell, which led defendant Raylock to order a five-man extraction team to remove him from the cell. (Id. ¶¶ 39-40). Russo "felt threatened and in fear of his life." (Id. ¶ 41). The complaint alleges that defendant Bectle[1] passed a food tray through the slot in Russo's door and when Russo came to get the tray, "Bectle attempted to slam and force the tray slot on the plaintiff's arms," which caused a 2-inch scar on Russo's arm. (Id. ¶¶ 42-43). Raylock returned to the cell with the extraction team, pepper sprayed Russo three times, entered the cell, and physically restrained Russo. (Id. ¶¶ 44-45). The officers then placed Russo in an emergency restraint chair and transported him to a strip cell where he was denied writing materials or any means of contacting his family. (Id. ¶ 47). Raylock informed Russo at this time that he would be placed in a cell with an inmate named Richard Wajda. (Id. ¶ 48). Raylock purportedly said to Russo, "you didn't really think Warden was going to let you get that visit?" (Id. ¶ 50). Russo was subsequently charged with misconduct, and the misconduct charge stated that Hileman had authorized the cell extraction. (Id. ¶ 51). The misconduct was later rewritten to omit any mention of Hileman. (Id. ¶ 52).

---

[1] Defendants state in the motion to dismiss that the proper spelling of this defendant's name is "Bechtel," but continue to use the spelling "Bectle" for the sake of consistency with the complaint. The court adopts the same style convention and continues to use the spelling "Bectle."

The complaint alleges that other inmates in the prison had previously refused to be transferred to cells with particular cellmates and were not forcibly extracted from their cells for doing so. (Id. ¶¶ 53-56). Russo asked several correctional officers if they had ever seen prison officials take such an action, and all said they had not. (Id. ¶¶ 58-75). The complaint asserts that the forcible cell extraction was retaliation for Russo filing grievances. (Id. ¶ 76).

Russo allegedly remained in the strip cell for sixteen days and was not given any writing materials, phone calls, or other "basic necessities" during that period. (Id. ¶ 77). Russo was subsequently informed that the officers he had spoken with about whether forcible extractions were a normal action had been placed on investigation by the prison. (Id. ¶ 78). The officers refused to speak with Russo after being placed on investigation. (Id. ¶ 79). Russo filed a grievance about the treatment of the officers. (Id. ¶ 80).

On January 22, 2024,[2] defendant Raylock placed Russo in a conference room. (Id. ¶ 83). Russo gave Raylock "metal" in accordance with the prison's policy on contraband. (Id. ¶ 84). Raylock responded by placing Russo in a cell where he would have no means of communicating with other inmates. (Id.). Russo "begged" to remain in a cell where he could interact with other inmates. (Id.). During this interaction, Russo was "rear cuffed" and there were 2 lieutenants and 3-4 correctional officers in the room. (Id. ¶¶ 86-87). Raylock "refused to compromise"

---

[2] The complaint alleges that the events occurred on January 22, 2023, but the court liberally construes this as a reference to January 22, 2024, because, according to the complaint, Russo was not yet in ACACC on January 22, 2023.

with Russo and pepper sprayed him while he was sitting and handcuffed. (Id. ¶¶ 89-90). Russo asserts that this action was retaliation. (Id. ¶ 91). Russo remained in an emergency restraint chair for 16 hours following this incident because he refused to leave the chair. (Id. ¶ 92). He was subsequently hospitalized because he had been in the chair for too long. (Id. ¶ 93). While in the hospital, he was purportedly forced to consume sedatives and assaulted. (Id. ¶¶ 94-95).[3] The complaint alleges that Raylock "forcefully removed" Russo from the restraint chair. (Id. ¶ 96). Russo was subsequently transferred to an outside mental health hospital for 45 days after attempting suicide.[4] (Id. ¶ 97).

The complaint asserts claims for excessive force, failure to intervene, assault, battery, deliberate indifference, harassment, retaliation, and negligence. (Id. at 11-12). Raylock, Bectle, Lawyer, Sellman, and Hileman are named as defendants. (Id. at 1-2). Russo seeks damages and declaratory relief.

## II.    **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

---

[3] Russo asserts that this incident is "being addressed in [a] separate claim." (Doc. 1 at 11). The court takes judicial notice that claims related to these alleged facts appear to be raised in Russo v. Reisinger, No. 1:25-CV-1772 (M.D. Pa. filed Sept. 23, 2025) (Neary, J.). Accordingly, the court does not construe the complaint in the instant case as asserting claims for this incident.

[4] The complaint does not advance any claims related to the attempted suicide.

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly,

550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## III.  Discussion

Plaintiff brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants advance the following arguments for dismissal: (1) the civil rights claims against defendant Hileman should be dismissed for failure to allege personal involvement; (2) the failure to discipline claim against Hileman and Sellman, the excessive force, assault, and battery claims against Bectle and Lawyer, the failure

8

to intervene claim against all defendants, and the retaliation claim against all defendants fail to state a claim; and (3) Hileman, Lawyer, Sellman, and Bectle are immune from Russo's state tort claims.

Defendants' personal involvement argument is correct. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. Id. A defendant's after-the-fact review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement. Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).

Personal involvement may also be pleaded through allegations that a supervisory defendant "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Santiago, 629 F.3d at 129 n.5 (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). To state such a claim, a plaintiff must allege the existence of a policy or practice and allege that: "(1) the existing policy or practice created an unreasonable risk of . . . injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury

resulted from the policy or practice." (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Here, Russo plainly fails to allege that Hileman was personally involved in the alleged civil rights violations. His only allegation of personal involvement against Hileman is that she authorized the use of an extraction team to remove Russo from his cell. (<u>See</u> Doc. 1 ¶ 51). There is no allegation that in authorizing the use of the extraction team, she authorized the team to pepper spray Russo or use any other excessive force, nor is there any allegation that she was aware of the team using this force at the time of the incident. Russo also does not allege the existence of any policy that could support a finding of personal involvement. Accordingly, all civil rights claims against Hileman will be dismissed for failure to allege personal involvement.

Russo's claims against defendant Sellman likewise fail to allege personal involvement. There are simply no allegations in the complaint from which it could be inferred that Sellman participated in any violations of Russo's civil rights. The only allegations against Sellman are verbal harassment and petty annoyances that plainly do not amount to civil rights violations. Harassing and threatening language by itself does not violate the Eighth Amendment. <u>See, e.g.</u>, <u>Sears v. McCoy</u>, 815 F. App'x 668, 670 (3d Cir. 2020); <u>Rieco v. Moran</u>, 633 F. App'x 76, 79 (3d Cir. 2015).

The court next considers the merits of the excessive force, assault, and battery claims against defendants Lawyer and Bectle.[5] Russo's excessive force claim is governed by the Fourteenth Amendment.[6] Wharton v. Danberg, 854 F.3d 234, 247 (3d Cir. 2017) (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)).

Pretrial detainees are entitled to at least as much protection from excessive force as prisoners who have been convicted of a crime. Bistrian v. Levi, 912 F.3d 79, 91 (3d Cir. 2018) (citing Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993)). Unlike prisoners who have been convicted of a crime, who may not be subjected to cruel and unusual punishment, pretrial detainees "cannot be punished at all under the Due Process Clause." Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citing Bell, 441 U.S. at 520). Thus, pretrial detainees may not be subjected to "excessive force that amounts to punishment." Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir. 2021) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)).

Unlike excessive force claims under the Eighth Amendment, which require plaintiffs to establish both an objective element and a subjective element to prove excessive force, excessive force claims under the Fourteenth Amendment are based exclusively on an objective-reasonableness standard. Id. (citing Kingsley v.

---

[5] Defendants state that they do not seek dismissal of the excessive force, assault, or battery claims against defendant Raylock. (Doc. 13 at 14).

[6] Russo's complaint does not state whether he was being held in ACACC as a pretrial detainee—which would mean his excessive force claim is governed by the Fourteenth Amendment—or a convicted prisoner—which would mean the claim is governed by the Eighth Amendment. The court assumes Russo was a pretrial detainee for the purpose of liberally construing his complaint because the Fourteenth Amendment standard is easier to satisfy than the Eighth Amendment standard.

11

Hendrickson, 578 U.S. 389, 396-400 (2015)). Thus, a pretrial detainee seeking to establish that the use of force was excessive "must show *only* that the force purposely or knowingly used against him was objectively unreasonable." Id. (emphasis in original) (citing Kingsley, 578 U.S. at 396-97).

There is no mechanical formula for determining when force is objectively unreasonable under the Fourteenth Amendment. Kingsley, 578 U.S. at 397 (citing County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998)). Instead, courts and juries must look to the particular facts and circumstances of the case, including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. (citing Graham, 490 U.S. at 396). These circumstances should be considered "from the perspective of a reasonable officer on the scene." Id. (quoting Graham, 490 U.S. at 396). A plaintiff can establish that the force used was excessive if he shows that the force was "not 'rationally related to a legitimate nonpunitive governmental purpose'" or that the force used was "excessive in relation to that purpose." Id. (quoting Bell, 441 U.S. at 561).

Under Pennsylvania law, "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (1994).

12

Russo's excessive force, assault, and battery claims against Lawyer are based on the two alleged incidents in which Lawyer purportedly slammed a door into Russo's back, while the claims against Bectle are based on the incident in which he closed the food tray slot on Russo's arm and caused Russo an injury. Defendants argue that all of these incidents are insufficient to state excessive force, assault, or battery claims upon which relief may be granted. (Doc. 13 at 18-21).

With respect to the claims against Lawyer, the court agrees. In the two alleged incidents, Lawyer purportedly slammed the cell door while Russo was walking into his cell. There is no allegation that these actions caused Russo physical harm, and this *de minimis* use of force—to the extent it can even be characterized as a use of force—is plainly insufficient to state claims for excessive force, assault, or battery.

The court finds, however, that the complaint adequately states claims for excessive force, assault, and battery, against Bectle. The complaint alleges that Bectle slammed a meal tray slot onto Russo's arm while Russo was getting his meal tray in a manner that caused a two-inch scar on Russo's arm. (Id. ¶¶ 42-43). This alleged use of force is sufficient to state claims for excessive force, assault, and battery. Although the force allegedly used by Bectle appears to have been fairly minimal, there is no allegation that Russo provoked physical harm by Bectle in any manner, nor is there any allegation that Bectle's actions were necessary to prevent a threat of harm or justified by any other factual circumstances. In these

circumstances, it is not clear that *any* force was permitted, and thus the minimal use of force by Bectle is sufficient to allege excessive force, assault, and battery.[7]

Turning next to the argument that Hileman, Lawyer, Sellman, and Bectle are entitled to immunity from Russo's state law tort claims for assault and battery, the Pennsylvania Subdivision Tort Claims Act generally grants immunity to local agencies for any action for damages caused by the actions of the agency or its employees. 42 Pa.C.S. § 8541. Employees of the local agency are granted immunity "to the same extent" as the agency. Id. § 8545. There are several enumerated exceptions to this immunity. Id. § 8542. Additionally, immunity does not apply if the claim alleges an "injury caused by the act of the employee . . . [that] constituted a crime, actual fraud, actual malice or willful misconduct." Id. § 8550.

With respect to Lawyer and Bectle, Russo's allegations are sufficient to allege that their actions constituted "willful misconduct" that would waive sovereign immunity. See id. Thus, these defendants are not immune from Russo's tort claims.[8]

As for Hileman and Sellman, they assert that they are entitled to immunity pursuant to Section 8545 because none of the enumerated exceptions under Section 8542 apply to this case and their actions do not constitute willful misconduct or any of the other categories enumerated by Section 8550. (Doc. 13 at 24-25).

---

[7] Defendants' brief focuses on Russo's characterization of Bectle's action as an "attempt" to harm him to argue that Bectle did not actually use force, but it is reasonable to infer from the allegation that Russo suffered a scar on his arm that Bectle used force.

[8] As discussed above, the claims against Lawyer are dismissed on other grounds.

The court agrees. The enumerated exceptions under Section 8542 plainly do not apply to this case, and there is also no basis to conclude that Hileman and Sellman committed a crime, actual fraud, or actual malice. Although the allegations in the complaint may support a finding that Raylock, Lawyer, and Bectle's actions constituted willful misconduct, Hileman and Sellman may not be held liable for this purported willful misconduct under a *respondeat superior* theory. See McNeal v. City of Easton, 598 A.2d 638, 642 (Pa. Commw. Ct. 1991) (noting that supervisory defendants were entitled to immunity for alleged wrongdoing by subordinate employees because there was no evidence that the supervisory defendants were aware of the subordinate employees' actions and therefore no basis to conclude that supervisory defendants committed willful misconduct). Accordingly, the tort claims against Hileman and Sellman will be dismissed.

Finally, defendants are correct that Russo's failure to intervene, retaliation, and negligence claims against all defendants fail to state a claim upon which relief may be granted. Russo offers nothing other than general, unsupported assertions to support these claims that are not entitled to the assumption of truth. See Santiago, 629 F.3d at 131-32.

Before dismissing a civil rights complaint for failure to state a claim, courts must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. Here, the court will deny leave to amend the dismissed claims as futile. Russo's brief in opposition to defendants' motion to dismiss does not indicate any additional facts he could allege that would cure the

15

defects in his complaint. Instead, he simply reiterates the conclusory assertions of liability included in his complaint. (See Doc. 17). Thus, it appears that any amended complaint would not cure the pleading deficiencies the court has identified in this opinion and leave to amend will be denied.

## IV.    Conclusion

The motion for partial dismissal is granted in part and denied in part, and the complaint will be dismissed except to the extent that it states excessive force, assault, and battery claims against defendants Raylock and Bectle. Raylock and Bectle will be required to answer plaintiff's complaint, and a case management order will be set to govern this case. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:        March 9, 2026

16